[No. B004280. Second Dist., Div. Three. Jan. 22, 1985.]

CITY OF CATHEDRAL CITY, Plaintiff and Appellant, v. COUNTY OF RIVERSIDE, Defendant and Respondent.

Constitution
amendment
necessary (?)

---

**COUNSEL**

Raymond E. Ott, City Attorney, Richards, Watson, Dreyfuss & Gershon, Mitchell E. Abbott and Michael Jenkins for Plaintiff and Appellant.

Gregory W. Stepanicich, City Attorney (Agoura Hills), as Amicus Curiae on behalf of Plaintiff and Appellant.

Gerald J. Geerlings, County Counsel, W. W. Miller, Chief Principal Deputy County Counsel, and Loyal E. Keir, Deputy County Counsel, for Defendant and Respondent.

## OPINION

### ARABIAN, J.—

#### INTRODUCTION

City of Cathedral City (City) filed a petition for writ of mandate requesting the trial court to compel County of Riverside (County) to pay to City the documentary transfer taxes collected by County, with respect to the sale or transfer of real property within the city limits of City, from and after November 16, 1981, the date on which City adopted its documentary transfer tax ordinance. The trial court denied City's petition and City appealed.

#### ISSUE

 This is a case of constitutional interpretation. The sole issue is whether Proposition 13 (Cal. Const., art. XIII A, § 4) prohibits cities incorporated after its effective date, July 1, 1978, from sharing in documentary transfer tax revenues collected by a county pursuant to Revenue and Taxation Code section 11911. We conclude that it does not.

#### FACTS

City was incorporated on November 16, 1981. On that date, the city council of City adopted ordinance number 2, omnibus in nature, establishing City's municipal code, creating its administration, and providing for its revenue and finances. One section of the newly adopted municipal code, chapter 3.22, provided for the imposition of a real property documentary transfer tax, at the rate of $.27 per $500 of the assessed value of the property being transferred, as authorized by Revenue and Taxation Code section 11911, subdivision (b).[1] A documentary transfer tax is the fee paid in connection with the recordation of deeds or other documents evidencing transfers of ownership of real property.

Many years prior to City's incorporation, County had adopted County ordinance number 516, imposing a documentary transfer tax at the rate of

---

[1]Revenue and Taxation Code Section 11911, subdivision (b), provides: "The legislative body of any city which is within a county which has imposed a tax pursuant to subdivision (a) may, by an ordinance adopted pursuant to this part, impose, on each deed, instrument, or writing by which any lands, tenements, or other realty sold within the city shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds one hundred dollars ($100), a tax rate of one-half the amount specified in subdivision (a) for each five hundred dollars ($500) or fractional part thereof."

$.55 per $500 of the assessed value of the property being transferred, the maximum rate authorized and allowed by Revenue and Taxation Code section 11911, subdivision (a).[2] Section 11911 provides for these tax revenues to be *shared* by any incorporated city in the county requesting it, one-half to go to the city and one-half to be retained by the county. The statutory mechanism for effecting the sharing provisions of this section is the adoption by a city of an ordinance imposing the tax (Rev. & Tax. Code, § 11911, subd. (b)), the payment of which is allowed as a *credit* against the tax owing a county on the same transfer (Rev. & Tax. Code, § 11911, subd. (c)).[3]

Thus, chapter 3.22 of City's new municipal code declared, in effect, that City was entitled to receive one-half of all documentary transfer tax revenues henceforth collected by County as a result of property transfers within City limits and demanded that these revenues be paid over to City. The "tax" thus created did not increase the tax liability of any person; it merely required the allocation of existing County tax revenues to City in accordance with the statutory scheme (Rev. & Tax. Code, § 11911).

Revenue and Taxation Code section 11931 requires each county to administer the documentary transfer tax ordinances of the cities. County refused to administer City's ordinance, on the ground that it violated section 4 of Proposition 13 (Cal. Const., art. XIII A, § 4, effective July 1, 1978), although County was then, and is now, transferring similar revenues to all other cities in County which were incorporated prior to 1978. After City's claim was rejected by County, City filed its petition for writ of mandate in the superior court to compel County to transfer these tax revenues. This appeal is from the trial court's denial of City's petition.

DISCUSSION

The purpose of Proposition 13 was "to provide effective real property tax relief." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd.*

---

[2]Revenue and Taxation Code section 11911, subdivision (a), provides: "The board of supervisors of any county or city and county, by an ordinance adopted pursuant to this part, may impose, on each deed, instrument, or writing by which any lands, tenements, or other realty sold within the county shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds one hundred dollars ($100) a tax at the rate of fifty-five cents ($0.55) for each five hundred dollars ($500) or fractional part thereof."

[3]Revenue and Taxation Code section 11911, subdivision (c), provides: "A credit shall be allowed against the tax imposed by a county ordinance pursuant to subdivision (a) for the amount of any tax due to any city by reason of an ordinance adopted pursuant to subdivision (b). No credit shall be allowed against any county tax for a city tax which is not in conformity with this part."

*of Equalization* (1978) 22 Cal.3d 208, 230 [149 Cal.Rptr. 239, 583 P.2d 1281].) ▮ Section 4 of Proposition 13 (Cal. Const., art. XIII A, § 4) provides: "Cities, counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

Since the tax in issue is not an ad valorem tax on real property, nor a sales tax, the focus of our inquiry is on whether it is the type of "transaction tax . . . on the sale of real property" which is prohibited by Proposition 13. *Los Angeles County Transportation Com.* v. *Richmond* (1982) 31 Cal.3d 197, 202, 203 [182 Cal.Rptr. 324, 643 P.2d 941], is instructive. ▮ In *Richmond* our Supreme Court, quoting *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d 208, set forth the following familiar rules for the construction of a constitutional provision: "It should be construed 'in accordance with the natural and ordinary meaning of its words. . . . The literal language . . . . may be disregarded to avoid absurd results and to fulfill the apparent intent of the framers . . .' and the language used must 'receive a liberal, practical common-sense construction which will meet changed conditions and the growing needs of the people.'" (*Id.,* at pp. 202-203.) With the foregoing rules in mind we find as follows:

▮ First, the full documentary transfer tax is presently being collected by County in the maximum amount permitted by statute. Thus, implementation of ordinance number 2 will not increase any tax obligation of the taxpaying public whom Proposition 13 was designed to protect and, as such, it does not create a new or additional tax within the meaning of article XIII A, section 4.

Second, it is clear from an examination of the ballot arguments[4] in the official voters' pamphlet published prior to the election that article XIII A, section 4, was not intended to deprive newly incorporated cities of a right enjoyed by existing cities to share in already existing county revenues. The opening paragraph of the ballot arguments by the authors of the initiative, Howard Jarvis and Paul Gann, states: "Limits property tax to 1% of market value, requires two-thirds of both houses of the legislature to *raise any other taxes,* limits yearly market value *tax raises* to 2% per year, and requires all

---

[4]The California Supreme Court has relied heavily on the voters' pamphlet to determine the voters' intent in interpreting Proposition 13. (See, e.g., *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 55-56 [184 Cal.Rptr. 713, 648 P.2d 935]; *Los Angeles County Transportation Com.* v. *Richmond* (1982) 31 Cal.3d 197, 205 [182 Cal.Rptr. 324, 643 P.2d 941]; *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at p. 231.)

other *tax raises* to be approved by the people."[5] (Italics added.) There is no suggestion in that description of the initiative measure that section 4 of article XIII A was designed to insulate counties from the statutory mandate that they share their documentary tax revenues with any city, newly incorporated or not, which fulfills the requirements of Revenue and Taxation Code section 11911.

Third, it is clear that section 4 of article XIII A does not pertain to the allocation of existing tax revenues. Therefore County's reliance on Proposition 13 as a reason for refusing to share documentary tax revenues with newly incorporated cities, while sharing such revenues with preexisting cities, is not justifiable and represents unwarranted discrimination by a political subdivision.

### CONCLUSION

In our interpretation we have not approached the questioned language as a constricting cubicle nor an impenetrable fortress which would defy commonsense. To the contrary, our holding that the ordinance does not violate article XIII A, section 4, of the California Constitution imparts practical wisdom, insures the future well-being of all cities of California, and represents the intended expression of the public will.

### DISPOSITION

The judgment of the trial court is reversed. The matter is remanded to the trial court which is ordered to grant the peremptory writ of mandate.

Klein, P. J., and Lui, J., concurred.

---

[5]Official Ballot Pamphlet, Primary Election (June 6, 1978) page 58, italics added.